IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 113-265 |
| | ) | |
| MATTHEW W. MONROE | ) | |

**O R D E R**

Before the Court are the parties' motions in limine. (Doc. nos. 50, 51.) Having considered all arguments of the parties, the Court **GRANTS** both motions in limine.

**I.  DEFENDANT'S MOTION IN LIMINE**

The Second Superseding Information alleges that, on October 4, 2013, Defendant harassed, impeded, intimidated, and interfered with U.S. Army Physical Evaluation Board Liaison Officer Angela Dodge by making three statements by telephone, as follows: (1) that he would arrive at Fort Gordon within four hours and that he would "f*ck everything up in his path while at [Fort Gordon] if necessary and [that he had] the means to do so"; (2) that he would "deal with" U.S. Army Medical Evaluation Board Administrative Support Assistant Roderick Bond in response to a conversation between Mr. Bond and Defendant's wife; and (3) that he would "bring down the wrath of hell" if he did not obtain the disposition he was seeking in a U.S. Army Medical Evaluation Board disability determination. (Doc. no. 37, pp. 1-2.)

In its notice of intent to offer proof of other crimes, wrongs, and acts, the government alleges that Defendant made two more threatening statements on October 4,

when he stopped to visit his unit in Texas on his way from California to Fort Gordon for an evaluation. (Doc. no. 44, p. 1; doc. no. 44-2, p. 1.) First, after being told his wife might be covered by life insurance up to $100,000.00, Defendant allegedly told his executive officer "that 'now he can kill his wife' or words to that effect." (Doc. no. 44-2, p. 1.) Second, "in some unclear context" Defendant allegedly asked his executive officer "[W]hy shoot paper targets when you can shoot real targets/people[?]" (Id.)

It is undisputed that Defendant did not repeat these alleged statements to Angela Dodge when he spoke with her by telephone on the same day. The government alleges that someone informed Mrs. Dodge of these two statements on October 4, but it is unclear whether she received this information before or after the phone conversation wherein Defendant purportedly made the threats that comprise the charged conduct. (See doc. no. 54, pp. 4-5.)

Under Rule 404(b), "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." There are two important exceptions to this general rule. First, "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Second, "[e]vidence of criminal activity other than the offense charged is not extrinsic under Rule 404(b) if it is (1) an uncharged offense [that] arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." United States v. Veltmann, 6 F.3d 1483, 1498 (11th Cir. 1993). In addition, the Court may exercise its Rule 403 discretion to exclude

evidence of a crime, wrong, or other act that is admissible under Rule 404 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." As explained below, none of the exceptions in Rule 404(b) apply to the statements Defendant allegedly made to his executive officer, and even if an exception did apply, the unfair prejudice substantially outweighs any probative value.

The government argues that evidence of Mrs. Dodge's awareness of the statements to the executive officer will assist the jury in understanding her perception of the threats Defendant allegedly made to her. (Doc. no. 44, p. 8; doc. no. 54, pp. 4-5.) The statements to the executive officer obviously do not concern Mrs. Dodge, Defendant's disability claim, or anyone else in Mrs. Dodge's department. The Texas statements are also completely unrelated to any topic of conversation between Defendant and Mrs. Dodge. The jury need not make any finding regarding Mrs. Dodge's perception of the threats. Their sole job is to determine whether Defendant made the threats and did so with the intent to forcibly impede, intimidate, or interfere with Mrs. Dodge's duties. Indeed, the government has already prevailed on its argument that it need not prove reasonable apprehension of bodily harm by Mrs. Dodge because simple assault is not an essential element of an offense under 18 U.S.C. §111(a)(1). (Doc. no. 53.)

At the hearing, the government argued that the Texas statements are admissible under Rule 404(b)(2) as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. There is no logical connection between (1) statements Defendant made to his executive officer while visiting

him in Texas regarding his wife's life insurance policy and his supposed preference of shooting real targets as opposed to paper targets; and (2) threats Defendant purportedly made to Mrs. Dodge in connection with the disposition of his disability claim and whether, in so doing, Defendant had motive, opportunity, intent, preparation, plan, knowledge, identity, mistake, or lack of accident. For this same reason, the Texas statements do not arise out of the same transaction or series of transactions as the charged offenses, they are not necessary to complete the story of the crime, and they are not inextricably intertwined with the evidence regarding the charged offenses.

The government also argues that the Texas statements are relevant because Defendant quickly admitted to making these statements during the investigation in an attempt to distract investigators from investigating and charging Defendant with the statements made to Mrs. Dodge. (Doc. no. 44, pp. 8-9; doc. no. 54, p. 5.) This argument, while creative, is irrelevant to the Rule 404 exceptions, except arguably the exception for information that is necessary to complete the story of the crime. But the government seeks admission of the Texas statements to complete the story of the investigation, not the crime itself, which falls outside the scope of the exception and also, notably, outside the larger scope of relevancy.

Even if the government could establish some basis for admission of the Texas statements, they are offensive in nature and have great potential to incite unfair prejudice. See United States v. Hands, 184 F.3d 1322, 1328 *corrected*, 194 F.3d 1186 (11th Cir. 1999) ("Some types of extrinsic acts are particularly 'likely to incite a jury to an irrational decision,' . . . few would doubt that violent spousal abuse falls into this category.") Any probative value is far outweighed by the unfair prejudice to Defendant.

Accordingly, Defendant's motion in limine is **GRANTED**. (Doc. no. 50.)

## II. THE GOVERNMENT'S FIRST MOTIONS IN LIMINE

The government seeks to prohibit the Defendant from (1) making arguments that do not derive from the record, (2) presenting any argument or reference to specific instances of witness conduct under Rule 608(b) without a prior ruling from the court as to admissibility, and (3) presenting any argument regarding consequences of conviction. (Doc. no. 51.) Defendant did not file a response to this motion, and has not opposed the second and third grounds of the motion. Therefore, the Court **GRANTS** these grounds as unopposed.

As to the first ground, Defendant cannot argue to the jury that the government cannot prove the elements of the offenses because no recording of the phone call between Defendant and Ms. Dodge exists. The elements of the substantive offenses obviously do not require a recording to exist. However, the jury will know that no recording exists and nothing in the case law prohibits Defendant from making any mention of this undisputed fact. For example, Defendant may argue that the credibility of the witnesses is critical because there is no recording of the conversation. See e.g., Strickland v. Norfolk S. Ry. Co., 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ."). Therefore, the Court also **GRANTS** this ground.

SO ORDERED this 21st day of August, 2014, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA